753 P.2d 1209

Loyd E. GRABER and Clara B. Graber, his wife; Arthur E. Wright and Doreen Wright, his wife, Plaintiffs/Appellees,

v.

The CITY OF PEORIA, a municipal corporation, Defendant/Appellant.

No. 2 CA–CV 88–0094.

Court of Appeals of Arizona, Division 2, Department A.

April 14, 1988.

**554**

Matthew Palenica, P.C. by Matthew Palenica, Phoenix, for plaintiffs/appellees.

Crampton, Woods, Broening & Oberg by Douglas G. Shook and Neal B. Thomas, Phoenix, for defendant/appellant.

## OPINION

**LACAGNINA, Chief Judge.**

The City of Peoria appeals from adverse jury verdicts and judgments entered in favor of certain homeowners on their claims for private intentional nuisance. The city argues reversible error as follows:

1. The trial court improperly instructed the jury on the law of nuisance.

2. The trial court improperly excluded evidence of the homeowners' violation of a provision of the uniform building code.

3. The homeowners' claims of nuisance occurring after the effective date of the claims statute, A.R.S. § 12–821(A), are barred.

4. The city was entitled to a directed verdict or judgment notwithstanding the verdict concerning the February 1, 1984 sewage incident; the failure to provide separate verdict forms negates the jury verdict in its entirety.

5. The city is entitled to a new trial.

We affirm the judgments as modified for the reasons stated below.

## FACTS

Loyd, Clara and Bill Graber, Arthur and Doreen Wright, and Frank and Patricia Moore [1] (homeowners) were owners of basement homes in the vicinity of West Cinnabar and 75th Avenue in Peoria. They brought an action against the City of Peoria for negligence, inverse condemnation and intentional nuisance, claiming damages for clean-up, lost wages, annoyance, inconvenience, discomfort, loss of personal property and damages for reduction in the fair market value of their homes resulting from the repeated entry of raw sewage into their homes through the basement bath facilities on specific dates from August 1982 through August 1986.

The homes were part of a development constructed between 1958 and 1961, and originally were connected to individual septic tanks. In 1971, they were connected to the city sewer system, by the basement bathroom facilities draining into a single line leading from each home that in turn emptied into an 8–inch sewer branch line located in an alley behind the homes. The feeder line emptied into a 10–inch sewer line which ran north/south along 75th Avenue. The city owns, operates and maintains both sewer lines. The evidence showed that the 10–inch line, designed to serve 1600 homes, was serving over 2500 homes in 1984. The homeowners' expert witness, a registered civil engineer, testified that he had informed the city in 1980 that the 10–inch sewer line was at or near capacity and that to allow additional connections would result in sewage overflow and flooding on the city's streets. The homeowners claimed that on 15 separate occasions raw sewage entered into their respective homes. In addition, a second expert testified that the lack of capacity of the 10–inch line caused or substantially contributed to the sewage entering the homes on all the dates, including the February 1984 influx. The parties stipulated that the entry of sewage resulted in the

1. Moores' claims were settled and are not at issue in this appeal.

loss of use and enjoyment of the homes and damaged them.

## JURY INSTRUCTIONS

 The trial court instructed the jury that "a nuisance is a condition which represents an unreasonable interference with another person's use and enjoyment of his property and causes damage." This is a correct statement of the law. *Armory Park Neighborhood Ass'n v. Episcopal Community Services in Arizona,* 148 Ariz. 1, 8, 712 P.2d 914, 921 (1985). *See Spur Industries, Inc. v. Del Webb Development Co.,* 108 Ariz. 178, 494 P.2d 700 (1972); *Tucson v. Apache Motors,* 74 Ariz. 98, 245 P.2d 255 (1952); *United Verde Extension Mining Company v. Ralston,* 37 Ariz. 554, 296 P. 262 (1931). What constitutes an unreasonable interference with another person's use and enjoyment of his property is determined by the injury caused by the condition and is not determined by the conduct of the party creating the condition. *City of Phoenix v. Johnson,* 51 Ariz. 115, 75 P.2d 30 (1938).

In *Armory Park,* the supreme court held in an action for public nuisance that the condition created by a religious community center in that case, was a nuisance even though the conduct which created the nuisance had been described by the trial court as "a most praiseworthy activity." The city's reliance on Restatement (Second) of Torts as support for its proposed instructions is misplaced; there are many Arizona cases on the law of nuisance.

## UNIFORM PLUMBING CODE VIOLATION

Prior to the commencement of trial, the trial court granted the homeowners' motion for partial summary judgment, finding that "the Peoria City Code did not require backwater valves to be installed in connection with the plaintiffs' property prior to January 24, 1984." The pertinent provision of the ordinance states as follows:

(a) Drainage piping serving fixtures, the flood level rims of which are located below the elevation of the curb or property line, at the point where the building sewer crosses under the curb or the property line, and above the crown level of the main sewer, shall drain by gravity into the main sewer, and shall be protected from backflow of sewage by installing an approved type backwater valve, and each such backwater valve shall be installed only in that branch or section of the drainage system which receives the discharge from fixtures located below the elevation of the curb or property line.

 Prior to 1984, this uniform plumbing code provision did not apply to the homeowners' single 8-inch sewer lines. On January 24, 1984, the city council adopted Ordinance 84–08 which eliminated the distinction between a single line serving below ground fixtures and one serving both upstairs and downstairs fixtures. Even assuming the city could have required retroactive application to the homeowners in this case, the evidence was irrelevant because the trial court had properly ruled that the homeowners were under no duty to mitigate their damages. *United Verde Extension Mining Co. v. Ralston, supra.*

## APPLICABILITY OF THE CLAIMS STATUTE

The city argues that the homeowners were barred from introducing evidence of any sewage influxes occurring after the effective date of the claims statute, A.R.S. § 12–821(A), because of their failure to comply with the terms of the statute in presenting the claims. Prior to the filing of their respective complaints in this case, each individual plaintiff filed claim forms with the City of Peoria concerning each specific incident of influx into their homes. In addition, each of these incidents was outlined in their respective complaints filed to institute the lawsuits. The city does not argue that it lacked sufficient notice of the claims prior to August 3, 1984, the effective date of the claims statute. Further, the city stipulated that the sewage influxes which occurred on August 9 and September 1, 1984, were properly a part of the homeowners' case. The city claims that the nine incidents of sewage influx which occurred after September 1 were barred by the claims statute because the homeowners never gave notice pursuant to the statute

or filed an amended complaint. We disagree.

■ First, the city cannot claim it was unaware of the exact dates of the subsequent influxes. It received answers to interrogatories dated May 1, 1986, which detailed all of the incidents subsequent to September 1, 1984. Second, we agree with the homeowners that a separate claim under A.R.S. § 12–821(A) is not required when the same continuing nuisance is the cause of the injuries, and when that continuing condition is the subject of a lawsuit pending with the court after initial compliance with the claims statute.

The city relies on the theory that each time the nuisance damaged the property, a new cause of action arose, *City of Tucson v. Apache Motors, supra,* therefore requiring separate compliance with the claims statute prior to litigating each incident. The purpose of the claims statute is to allow the city an opportunity to investigate the claim, assess its liability and obtain a settlement. *See Mammo v. State,* 138 Ariz. 528, 675 P.2d 1347 (App.1983). That purpose was well served in this case. The homeowners filed the required claims with the city, thereby giving notice; the city did not settle their claims. Homeowners filed suit and then claimed additional damages for subsequent injuries from the same source, a continuing trespass or nuisance. The notice purpose of the claims statute was fulfilled by the original claims and the notice requirements that are built into the civil pretrial rules. In this case, discovery answers and pretrial statements placed the city on notice of all claims from the same source for which homeowners sought recovery. The city was not surprised at trial.

In addition, the city did not argue nor did the evidence show that the nuisance was permanent in nature, thereby requiring that the homeowners claim all of their present and future damages in one action. D. Dobbs, *Handbook on the Law of Remedies* § 5.4 at 335–336 (1973). Instead, the evidence showed and the homeowners pled damages for repeated incidents caused by a continuing nuisance which was not permanent but capable of repair or abatement. We note also that the homeowners were not claiming events which occurred more than one year *ante litem. See, e.g., Thomann v. City of Rochester,* 256 N.Y. 165, 166, 176 N.E. 129, 130 (1931) (plaintiff precluded from claiming damages "antedating by more than thirty days the presentation of the notice in the statutory form").

## MOTIONS FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT

■ Viewing the evidence in the light most favorable to upholding the verdict in this case, *Adroit Supply Company v. Electric Mutual Liability Insurance Co.,* 112 Ariz. 385, 542 P.2d 810 (1975), the jury could have found that the city caused or substantially contributed to the nuisance that damaged the homeowners, including the influx which occurred on February 17, 1984. The jury was aware that as early as 1980 the city had knowledge of the inadequacy of the sewer system. In addition, assuming the piece of concrete found after the February 1984 influx was partially blocking the line, the jury could still have reasonably concluded, based on expert testimony, that a line with adequate capacity would have allowed protection from such a partial blockage even during peak flows.

In light of our decision that the claims statute did not bar the homeowners' post-August 3, 1984 claims, and in light of our conclusion that sufficient evidence existed as to each individual influx that the city created a nuisance, we necessarily find that the general verdict forms submitted to the jury were proper.

## MOTION FOR NEW TRIAL

■ On review we will not disturb a trial court's ruling on a motion for new trial absent a finding of a clear abuse of discretion. *State v. Veatch,* 132 Ariz. 394, 646 P.2d 279 (1982). We find no abuse of discretion in this case. First, the city argues there was an improper opening statement by counsel's reference to the homeowners' situation as analogous to a "Stephen King horror story." The trial court acted within its discretion in determining that the statement was not sufficiently prejudicial to grant a mistrial.

■ Second, the city argues that the testimony from the homeowners concerning

their estimates of damages for inconvenience and annoyance was improper. We agree. However, some of this testimony was heard without objection, without a subsequent motion to strike, and we hold it was harmless in light of the verdicts returned, which in most cases were one-tenth of the amount requested or less. Third, one homeowner's reference to a "settlement" with the city manager's office was actually a misstatement and not intended to mislead the jury concerning any possible settlement on the pending lawsuit.

■ Finally, the city argues that the trial court improperly instructed the jury that the homeowners were entitled to "the cost of repairing any damage to the house or any decrease to the value of the property, but not both." This is an incorrect statement of the law. In general, the proper measure of damages is the lesser of the two amounts. *See A.I.D. Insurance Services v. Riley*, 25 Ariz.App. 132, 541 P.2d 595 (1975). In this case, absent any claim that the nuisance or trespass is permanent in nature, the proper measure of damages is limited to the cost of repair. Dobbs, *supra.* It is obvious based on the homeowners' testimony concerning their opinion as to the reduction of the fair market value of their homes and from the exhibits admitted showing the estimated cost of repair to the homes that the jury awarded the amount reflecting the reduction in fair market value; therefore, we modify the respective judgments for property damage to reflect an award for the undisputed estimated cost of repairs as follows:

1. Loyd and Clara Graber—$7,632.62; and

2. Arthur and Doreen Wright—$15,125.50.

In all other respects the judgments are affirmed.

HOWARD, P.J., and HATHAWAY, J., concur.